## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **ARTHUR ROY MORRISON, ID # 1492042,** ) | |
| **Petitioner,** ) | |
| **vs.** ) | **No. 3:12-CV-4916-N  (BH)** |
| ) | |
| **WILLIAM STEPHENS,[1] Director,** ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
| **Respondent.** ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Arthur Roy Morrison (Petitioner) challenges his conviction for aggravated assault in cause F07-55832-HS.  Respondent is William Stephens, Director of TDCJ-CID.

### A.  <u>Factual and Procedural History</u>

On September 21, 2007, the State indicted Petitioner for aggravated assault on or about July 30, 2007, enhanced by a prior theft conviction.  (Clerk's Record ("C.R."):2-3).  On February 8, 2008, the indictment was amended to correct the spelling of the victim's name. (C.R.:22).  Petitioner pleaded not guilty and was tried before a jury in Dallas County on February 19-21, 2008.  (C.R.:4). The state appellate court recounted the evidence presented at trial as follows:

> At trial, Brian Kilburn was the first witness to testify about the incident.  Kilburn testified that on July 30, 2007, he and his wife,

---

[1] On June 1, 2013, William Stephens succeeded Rick Thaler as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, Stephens should be "automatically substituted as a party."

Jennifer Tunay, went for a bicycle ride on the Katy Trail and reached the trail at approximately 9:00 p.m.  Although it was approaching dark, Tunay and Kilburn both had lights on their bikes and also wore headlamps on their helmets.

When the couple approached Lemon [sic] Avenue, appellant suddenly rode up beside the couple and yelled at the top of his lungs "[o]n your left, goddamn it.  On your left."  Appellant was approximately six inches from Kilburn as he passed the couple, and Kilburn was startled.  Kilburn called appellant an "asshole" and appellant sped off.

Appellant was ahead of the couple on the trail and they noticed that he began to slow down.  Tunay was uncomfortable about the situation and asked Kilburn if they could just pass appellant and exit the trail.  As the couple accelerated to pass appellant, Kilburn was ahead of Tunay by about 6-7 feet.  As they passed appellant, Kilburn yelled the same thing that appellant had yelled at them.  As the couple continued to ride, looking for a place to exit the trail, Tunay thought she was having problems with her bike because it would slow down periodically.  She turned around and saw appellant behind her, rubbing her back tire with his front wheel.  Appellant would ride up and tap Tunay's bike and then fall behind a little bit.

Kilburn yelled for Tunay to speed up, but every time she tried, appellant pulled up and kicked her knee.  This continued for several hundred feet.  Kilburn initially thought appellant was trying to hit Tunay, but when he turned around the headlamp on his helmet shined on a flash of silver.  Kilburn then realized that appellant was trying to slash Tunay's arm and neck with a box cutter.

Eventually, appellant sped away from the couple.  Tunay and Kilburn pulled to the side of the trail so that Kilburn could check Tunay for injuries.  While they were stopped, the couple heard what they thought was a jogger coming toward them.  Appellant suddenly appeared, pulled Tunay off of her bike and stabbed her in the chest with the box cutter.  Appellant continued to try to stab Tunay and she tried to fight him off and hit him.  Kilburn yelled for appellant to stop and threw his bike at him.  Although the bike hit appellant in the face and torso, he continued to stab at Tunay.  When Kilburn hit appellant with a bike the second time, appellant turned toward Kilburn and yelled, "[n]ow you're going to get it."  Appellant then advanced toward Kilburn with the box cutter.

2

When appellant turned toward Kilburn, Tunay was able to retrieve her cell phone and call 911. Tunay told the operator she was attacked by a man with a knife. The conflict continued while Tunay was on the phone with the 911 operator. Kilburn stated that he struck appellant with his bike twice and that he "f-d [appellant's] bike up." Kilburn is also heard apologizing to Tunay for hitting her with the bike. Tunay later told Kilburn he did not actually hit her.

After a few minutes, the couple heard helicopters overhead. Kilburn saw appellant throw the box cutter in the brush along the side of the trail, run toward his bicycle and attempt to ride away. As he walked his bike away, appellant turned around and yelled "[t]hanks, now I can't even ride my bicycle." When the police arrived, Kilburn and the police searched for the weapon but the search proved unsuccessful.

On cross-examination, Kilburn was questioned about his testimony that the weapon appellant used was a box cutter. Kilburn admitted that he and his wife described the weapon as a knife in the 911 call, but testified at trial that the weapon was a box cutter that was very similar to one he owned. Kilburn also admitted that he later wrote about the incident on an internet blog and stated:

> Why we reacted the way we did remains a bit of a mystery to me, but after having this happen so many times at the lake and various places, and after having had so many close calls with people in cars, I think we'd just had enough. So we kicked it into gear, passed the dude to let him have a taste of his own medicine....

Officer Johnny Tadlock also testified about responding to the 911 call. Tadlock stated that he observed cuts on Tunay which were treated by paramedics at the scene. A police report was prepared at the time of the incident. Among other things, the police report contained the recitation that "[w]itness Kilburn said the suspect was bleeding from the head an [sic] suspect's bike was damaged so that it could not be ridden."

Tunay also testified, and admitted that her husband was very angry when appellant first passed them on the trail in the manner that he did. Tunay stated that when appellant caught up to them after they attempted to pass him on the trail, she believed appellant was trying to slap her; she did not see a knife. Then, Tunay felt herself get all

3

wet, apparently from her water hose being sliced. Although her husband yelled at her to slow down so that he could get in the middle, Tunay was unable to do anything because she was clicked into her pedals. Tunay stated that when her husband said "just stop," she stopped. On cross-examination, however, Tunay admitted that when she gave a written statement to the police she stated that she finally "stopped or crashed." Tunay also described the first time her husband threw a bike at appellant. She testified that when appellant pulled her off of her bike, she thought he was punching her, but she felt something sharp going into her. Although Tunay fought back and attempted to punch appellant, he continued to hold her arm and try to stab her. While appellant was holding her wrist and attempting to stab her, her husband threw a bike at appellant. She heard the bike hit appellant, but stated that it did not hit her.

Richard Snedden, an employee of Richardson Bike Mart also testified. Snedden stated that on August 11, 2007, appellant came into the shop and asked if his bike could be repaired by the end of the day. Appellant told Snedden the bike had been damaged when he got into a fight on the Katy trail as a result of a couple harassing him. Snedden said he thought appellant had stated that he stopped and the couple continued their harassment. When Snedden noticed a particular kind of damage to the bike, appellant stated that it could have happened when he was "taking care of one of the individuals" he had been in the altercation with.

*Morrison v. State*, 2009 WL 2152560, No. 05-08-00336-CR, slip op. at *1-3 (Tex. App.–Dallas, July 21, 2009, no pet.). The jury found Petitioner guilty, and after his plea of true to the enhancement and evidence and argument regarding punishment, it sentenced him to thirty-five years. *Id* at 3.

On direct appeal, Petitioner alleged that the trial court erred in denying his request for a jury instruction on self defense, the court erred in admitting photographs of the victim's injuries into evidence, the evidence was factually insufficient to support his conviction, and his conviction should be reversed due to cumulative error. *Morrison*, slip op. at *1. Petitioner's conviction was affirmed on direct appeal, and he did not file a petition for discretionary review. (Pet. at 3). Petitioner's first state habeas application was dismissed because the direct appeal was pending. *See Ex parte*

4

*Morrison*, WR-28,594-05 (Tex. Crim. App. July 29, 2009).  Petitioner asserts that he mailed a second state writ that was not filed by the district clerk's office. (Pet. at 3).  After writs of mandamus and a federal habeas petition that was dismissed without prejudice for failing to exhaust state remedies, Petitioner filed a state writ on March 2, 2011, that was denied on its merits without a written order by the Texas Court of Criminal Appeals on September 19, 2012.  (Supp. S.H.Tr.[WR-28,594-13]:cover);  *see also Ex parte Morrison*, WR-28,594-13 (Tex. Crim. App. Sept. 19, 2012).

**B.    Substantive Claims**

On November 26, 2012, Petitioner mailed his petition for federal habeas relief raising the following grounds for relief[2]:

(1) The prosecution knowingly offered perjured testimony from several witnesses numerous times at his trial (ground one);

(2) The trial court erred in denying Petitioner a jury charge on self-defense and by failing to permit him to proceed *pro se* on appeal (ground three);

(3) His trial attorneys provided ineffective assistance of counsel by:

-refusing to give Petitioner a copy of the letter he submitted to the Grand Jury on Petitioner's behalf;

-refusing to submit a motion for bail reduction;

-refusing to give Petitioner copies of certain exhibits;

-communicating ineffectively with Petitioner regarding possible defense strategies;

-failing to contest an alleged void enhancement paragraph;

-committing perjury during the opening statement;

---

[2]  Respondent does not assert that petitioner's federal petition is barred by the statute of limitations, contending that it is more efficient to address petitioner's claims on their merits.  (Resp. at 9).  *See Coker v. Thaler*, 670 F.Supp.2d 541, 546 (N.D. Tex. 2009) (holding that, because the AEDPA statute of limitations is not a jurisdictional bar that divests a federal court of habeas jurisdiction, a court is not required to address limitations prior to denying relief).

-maliciously misrepresenting the law during cross-examination;

-failing to object to the presence of a State witness in the courtroom;

-failing to properly investigate and challenge the alleged perjury;

-failing to present witnesses; and

-coercing Petitioner not to testify; (ground two);

(4) His appellate counsel provided ineffective assistance of counsel by:

-failing to honor their agreement to seek a new punishment hearing;

-failing to raise certain issues on direct appeal; and

- failing to withdraw from the case after ordered to do so by Petitioner (ground two); and

(5) his state habeas proceedings were deficient because the trial judge refused to rule on his pleadings, appointed counsel to represent the court, and the clerk's office maliciously threw his papers away the evidence was legally insufficient to support his convictions (ground three)

(Pet. at 6-6i). Respondent filed a response on March 28, 2013, and provided the state court records.

Petitioner filed a reply brief on July 29, 2013, and submitted additional evidence in support of his writ on June 28, 2013, and August 12, 2013, including letters he wrote to his trial counsel (doc. 68), and copies of exhibits and documents from the trial record. (doc. 82).

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

with respect to any claim that was adjudicated on the merits in State court pro-

ceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unrea-
> sonable application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determin-
> ation of the facts in light of the evidence presented in the State court
> proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-

eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently

than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state

court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry v. Johnson*, 532

U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it

"unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it

should not apply or unreasonably refuses to extend that principle to a new context where it should

apply."  529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry

7

should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. PROSECUTORIAL MISCONDUCT

In his first ground for relief, Petitioner asserts that the prosecution committed misconduct at trial by knowingly using false testimony from State's witnesses. He points to numerous points in the record where the State's witnesses' testimony was either inconsistent with prior statements from these witnesses, was inconsistent with the testimony of other witnesses, was inconsistent with photographs admitted into evidence, differed from his own version of events, or differed from his perception of the physical evidence. (Pet. at 6a-6d).

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: 1) the testimony was actually false; 2) the prosecution knew it was false; and 3) that it was

material. *Napue v. Illinois*, 360 U.S. at 271. Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271.

Petitioner has failed to establish either that the testimony by State's witnesses at trial was false, or that the prosecution knew it was false. Prior written statements that differ from the testimony at trial is not evidence that testimony was perjured. Likewise, the fact that one witness' testimony differed from that of another or from Petitioner's version of events is not evidence that the prosecution sponsored false testimony. Conflicting testimony is to be resolved by the jury. *See Koch v. Puckett*, 907 F.2d 524, 531 (1990). Furthermore, Petitioner presents no evidence that the prosecution knew that any of the allegedly conflicting statements was false. The state habeas court concluded that there was no evidence that perjured testimony was offered, that a difference between the testimony and Petitioner's version of events is not evidence of perjury, and that the conflicts in the evidence were properly resolved by the jury. (S.H.Tr.Supp.[WR-28,594-13]:91). This is not contrary to federal law, and this ground is without merit.

## IV.  TRIAL ERROR

In his third ground for relief, Petitioner asserts that the trial court erred in denying him a jury charge on self-defense. He also appears to assert that the trial court also erred by failing to permit him to proceed *pro se* on appeal. On direct appeal, the state appellate court ruled that Petitioner was not entitled to a jury charge on self-defense because the evidence did not raise the issue and because he had not admitted the elements of the offense with which he was charged. *Morrison*, slip op. at *3-4. On state habeas, the state habeas court concluded that Petitioner had failed to prove that the

trial court denied him the right to proceed *pro se* on direct appeal. (S.H.Tr.Supp[WR-28,594-13]:91). These decisions are not contrary to federal law.

Under Texas law, an accused is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless what the trial court may think about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). Under Texas statutory law, a defendant is entitled to a jury instruction on self-defense with deadly force when there is evidence that he reasonably believed that deadly force was immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *See* TEX. PENAL CODE ANN. §§ 9.31(a), 9.32 (Vernon 2003). In order to be entitled to the instruction, however, a defendant must essentially admit the elements of the offense. *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). The state appellate court overruled this point of error after finding that Petitioner had not admitted the essential elements, and because the evidence did not raise self-defense as an issue. In a federal habeas proceeding, a court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Petitioner has not demonstrated that the state court either unreasonably applied federal law or ruled contrary to federal law.

Petitioner next asserts that the trial court erred in prohibiting him from representing himself on appeal. A criminal defendant has no constitutional right to represent himself on appeal from his criminal conviction. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 120, 163 (2000). Furthermore, the record does not reflect that the trial court prevented Petitioner from representing himself. After he was convicted, Petitioner signed a notice of appeal to the Fifth District Court of Appeals, in which he requested the appointment of counsel. (C.R.:42). This same

10

document includes the trial court's appointment of counsel for Petitioner. *Id*. These claims are without merit and should be denied.

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his second ground for relief, Petitioner asserts that trial counsel was ineffective in numerous respects.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id*. at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393

n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.  *Strickland*, 466 U.S. at 695-96.

## A.   Pre-Trial Errors

Petitioner asserts that counsel committed numerous errors prior to trial, including: 1) refusing to give him a copy of the letter he submitted to the Grand Jury on Petitioner's behalf; 2) refusing to submit a motion for bail reduction; 3) failing to contest an alleged void enhancement paragraph; 4) refusing to give him copies of certain exhibits; and 5) communicating ineffectively with him regarding possible defense strategies.  With respect to his claims that his attorneys failed to provide him a copy of a letter given to the Grand Jury, file a motion for bail reduction, or give him copies of certain exhibits, Petitioner has not shown prejudice because he has failed to demonstrate that there is a reasonable probability that he would not have been convicted but for these failures.[3]

As for Petitioner's claim that counsel failed to object to the enhancement paragraph, the enhancement paragraph alleged that Petitioner was convicted of the felony offense of theft in Cause Number F93-58780 on November 16, 1994. (C.R.:2).  At trial, the State placed into evidence the judgment reflecting that Petitioner pled guilty to theft and was sentenced to two years imprisonment on November 16, 1994, as well as a copy of Petitioner's written guilty plea. (State's Ex. 29).  While Petitioner states in a conclusory fashion that "theft of a person" is not a crime, he has not presented any evidence to support his allegation that this judgment was void.  Conclusory allegations are

---

[3] It is also unclear when Petitioner requested these documents.  He has submitted a handwritten copy of a letter he claims to have sent to one of his attorneys after the trial seeking the letter to the grand jury, copies of letters and pleadings, and a copy of the defense file. (*See* doc. 68 at 11).  Any failure to provide documents after the trial had no effect on the trial.

insufficient to raise a constitutional issue in a federal habeas proceeding.  *Ross v. Estelle*, 694 F.2d

1008, 1012 (5th Cir.1983). Therefore, counsel was not ineffective for failing to object on this basis.[4]

Petitioner also asserts that counsel was ineffective for failing to communicate effectively

with him.  He has submitted handwritten copies of letters he wrote lead defense counsel, Daniel

Eckstein. (doc. 68).  They include requests that counsel interview certain witnesses who saw

Petitioner after the incident, seek an examining trial, and have Petitioner's knife examined.  The

letters also seek counsel's opinion on Petitioner speaking to the media and setting forth his version

of events, and they appear to decline a plea offer.  Some of Petitioner's statements in his letters

indicate that he had recently communicated with his attorney.  Petitioner has also failed to

demonstrate prejudice because he has not shown a reasonable probability that he would not have

been convicted if his attorneys had communicated with him with greater frequency on subjects such

as an examining trial, having a knife examined that was never used against Petitioner at trial, or

calling witnesses who did not see the altercation.  As for possible defensive strategies, counsel was

clearly aware of Petitioner's version of events and used it in cross-examining the State's witnesses.

Petitioner has failed to establish ineffective assistance of counsel under *Strickland* with regard to

these claims.  The denial of these claims at the state level was therefore not an unreasonable

application of *Strickland*.

**B.**     **Trial Errors**

Petitioner further asserts that his attorneys erred during his trial by: 1) committing perjury

during the opening statement; 2)  failing to properly investigate and challenge the alleged perjury

---

[4]  The State also presented evidence at trial that Petitioner pled guilty to another felony theft on November 16, 1994.
(State Ex. 30).  Even if the judgment for the felony alleged in the enhancement paragraph was void, the second felony
conviction could have been used to enhance his range of punishment.  He has therefore not shown prejudice.

of State's witnesses; 3) maliciously misrepresenting the law during cross-examination; 4) failing to object to the presence of a State witness in the courtroom; 5) failing to present witnesses; and 6) coercing him to not testify.

### 1.    Opening Statement

The record reflects that defense attorney Daniel Eckstein argued during his opening statement that Kilburn and Tunay were violent, antisocial people who have problems with everyone with whom they come into contact, that any of the three people involved in the fight could have left at any time, that all three were acting like children by fighting and yelling at each other, that Petitioner did what he needed to do to protect himself, and that no box cutter was used. (R. 4:13-15). Petitioner's perjury claim is based on the statements that he could have left at any time and was fighting and acting like a child.  He has failed to demonstrate either deficiency or prejudice.

The opening statement was a summary of the defense – that there was no direct evidence of a weapon being used by Petitioner, and that Kilburn's and Tunay's testimony that Petitioner was the aggressor was not credible.  Counsel's argument did not contradict any evidence presented by the defense.  While this defensive strategy was ultimately unsuccessful, Petitioner has not demonstrated deficient representation.  If counsel has made an adequate investigation, an informed decision based on trial strategy cannot be the basis for a claim of ineffective assistance of counsel unless the decision was so poorly chosen that it "permeates the entire trial with obvious unfairness." *United States v. Cotton*, 343 F.3d 746, 753 (5th Cir. 2003), *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  Petitioner has not made this showing.  Nor has he shown a reasonable probability that he would not have been convicted if counsel had not made the statements.

14

2.      **Failure to Investigate and Present Witnesses**

Petitioner also asserts that his attorneys were ineffective for failing to investigate the alleged

perjury by the State's witnesses and for failing to call defense witnesses.

With regard to any alleged perjury, counsel aggressively cross-examined the State's

witnesses about any discrepancies between their testimony and prior statements and the physical

evidence. (R. 4:84-144, 178-206, 216-227).  Petitioner's reply lists numerous complaints about the

cross-examination (Reply at 15-17), but he has failed to allege or establish how counsel was

deficient respect to any alleged perjury. [5]  Furthermore, counsel's investigative notes reflect that he

did speak to several of the witnesses that Petitioner asked to be interviewed. (*See* doc. 82 at 13-14).

Petitioner has not shown what further investigation should have been done or what it would have

accomplished.  *See Harrington v. Richter*, 131 S.Ct. 770, 789–90 (2011) ("An attorney need not

pursue an investigation that would be fruitless, much less one that might be harmful to the defense.")

As for his claim that counsel should have called witnesses on his behalf, complaints of

uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial

evidence is a matter of trial strategy, and because allegations of what a witness would have stated

are largely speculative.  *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009).  To prevail on an

ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the

witness, demonstrate that the witness was available to testify and would have done so, set out the

content of the witness's proposed testimony, and show that the testimony would have been favorable

to a particular defense.  *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595,

602 (5th Cir. 1985).  Here, Petitioner has failed to demonstrate that the witnesses he claims should

---

[5]  Indeed, in one of his letters written to his attorney that Petitioner submitted to this Court, Petitioner stated that his defense attorneys had put on a good defense and had "caught the nut jobs in every lie possible." (doc. 68 at 10).

have been called to testify at his trial were available and willing to testify, and that their testimony would have been favorable to his defense.  Notably, the witnesses Petitioner lists only saw him after the incident on the Katy Trail, but did not actually witness it.  Petitioner is therefore not entitled to relief on these claims.

### 3.   <u>Misrepresenting Law</u>

Petitioner asserts that counsel misrepresented the law during his cross-examination of Kilburn by asking the witness whether it is "frowned upon" in the cycling community for one rider to "spotlight" another with a bicycle helmet light.  (Pet. at 6f, Reply at 15; R. 4:101).  The crux of Petitioner's argument appears to be that when Kilburn turned towards him on the trail, his helmet light shone on Petitioner's face, and this was both a violation of traffic laws and an a felony assault. While Petitioner cites to Texas statutes concerning requirements for bicycles, he fails to demonstrate how an alleged violation of a traffic law by Kilburn constituted an assault.  Even if it were an assault, Petitioner fails to allege how the alleged misrepresentation might have affected the outcome of his trial.  Counsel was therefore not ineffective for any alleged misrepresentation of the law.

### 4.   <u>Failure to Object</u>

Petitioner next asserts that counsel was ineffective for failing to object that a State's witness was in the courtroom for a period of time after the Rule was invoked.

During a break from the testimony of Bryan Kilburn, one of Petitioner's attorneys was informed that a police officer was in the courtroom listening to testimony.  (R. 4:77).  The trial judge reminded the prosecutors that it was their obligation to tell their witnesses to remain outside the courtroom and informed the defense attorneys that they could object if they felt that any future testimony by the officer was influenced by something he might have heard.  (R. 4:78).  Defense

16

counsel did not lodge any objections.

Assuming that this police officer was the one who later testified at trial, Petitioner has failed to demonstrate either deficiency or prejudice under *Strickland.*  He has failed to allege in what way the officer's testimony might have been influenced, and if so, how this prejudiced his defense. Counsel was not ineffective in this regard.  *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

### 5.     Coercing Petitioner Not to Testify

Finally, Petitioner asserts that his trial counsel were ineffective for coercing him not to testify.  In a sworn affidavit submitted at the state habeas level, defense counsel Daniel Eckstein stated that he counseled Petitioner several times regarding his right to testify on his own behalf, that Petitioner chose not to do so, that this decision was Petitioner's alone, and that this decision was greatly influenced by Petitioner's criminal history, including a robbery that was ultimately reduced to a theft of person.  Eckstein further stated that Petitioner was admonished by the trial judge on the record regarding his right to testify. (Supp. S.H.Tr.[WR-28,594-13]:93-94). The trial record reflects that shortly before the State rested its case, the trial judge admonished Petitioner that he had an absolute right to testify; that although his attorneys could advise him, the choice was his; that no one could prevent him from taking the stand; and that if he chose not to testify, the jurors would be instructed that they could not consider or refer to this decision in reaching a verdict. (R. 5:5-6). Petitioner acknowledged this admonition by stating, "Yes, sir."  After the jury returned and the State rested, the defense rested without calling any witnesses.  (R. 5:6-7).  The jury charge instructed that a defendant may elect to testify in his own behalf, that Petitioner elected not to testify, and that the

jury could not take this into consideration when reaching a verdict. (C.R.:30).

The record does not support Petitioner's self-serving allegation that his attorneys coerced him not to testify.  The trial record and the state habeas record reflect that Petitioner made this decision after being admonished by the trial court and after discussions with counsel.  Therefore, the state habeas court's denial of this claim was not an unreasonable application of *Strickland*. Petitioner's claims of ineffective assistance of trial counsel are without merit and should be denied.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his second ground for relief, Petitioner also alleges that appellate counsel was ineffective for failing to honor an agreement to seek a new punishment hearing, to raise certain issues on direct appeal, and to withdraw from the case after being ordered to do so by Petitioner.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, Petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688).  "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments

18

based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted).   To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal."  *Phillips*, 210 F.3d at 348.

Petitioner first contends that appellate counsel was ineffective for failing to seek a new punishment hearing, per their agreement , after the punishment verdict and judgment were lost. (Pet. at 6g).  The signed judgment is part of the clerk's record. (C.R.:37-39).  Petitioner therefore appears to be referring to the fact that the signed punishment jury charge could not be located.  The record reflects that after the trial court was ordered to supplement the record with the punishment jury charge, appellate counsel and the assistant district attorney stipulated to a copy of the punishment jury charge that was stored on the court reporter's computer, but did not bear a signature. (C.R.Supp.[dated Feb. 10, 2009]:1-2).  The record further indicates that the punishment jury charge was read to the jury by the trial judge without objection from the parties. (R. 5:51).   Then, after closing arguments and jury deliberation, the presiding juror read the jury's verdict into the record, and the trial judge had the jurors raise their hands to reflect that that was the verdict. (R. 5:59).

Under Texas law, when a filing designated for inclusion in the clerk's record has been lost or destroyed, the parties may by written stipulation deliver a copy of the filing to the trial court clerk for inclusion in the record.  TEX. R. APP. P. 34.5(e).  If the parties cannot agree, the trial court must determine what constitutes an accurate copy of the missing document and order it to be included in the record. *Id*.  Furthermore, even where an accurate copy of the proper jury charge cannot be submitted in the record to the appellate court, reversal is not warranted under state law where the reporter's record of the trial reflects that the charge was read to the jury, the jury received the charge,

and the jury reached an unanimous verdict.  *See Pietrzak v. State*, 2002 WL 31957883, *5 (Tex. App.-Dallas, Jan. 23, 2003, no pet.).  Petitioner has therefore shown no prejudice because appellate counsel did not seek reversal based on this issue.  Even had counsel not agreed to the replacement jury charge, the trial judge would have submitted it to the appellate court.  His punishment would not have been reversed on appeal because the reporter's record reflects the jury's verdict.

Petitioner next asserts that his appellate attorney was ineffective because he failed to raise certain grounds on appeal and because he refused to withdraw despite being "ordered to" do so after he filed a brief with the state appellate court, which Petitioner sought to have stricken.  (Pet. at 6g-6h).  A criminal defendant cannot force his appellate counsel to advance issues with which counsel does not agree, and he does not have the right to new appointed counsel who necessarily agrees with him. *See Vega v. Johnson*, 149 F.3d 354, 361 (5th Cir.1998); *United States v. Cockerham*, 396 Fed. App'x 66 (5th Cir. Sept. 22, 2010).  Furthermore, Petitioner has failed to establish either deficiency or prejudice.  He asserts that appellate counsel was ineffective for failing to argue that the State presented perjured testimony at trial, but he has not demonstrated that this argument had any merit. *See United States v. Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).  Appellate counsel raised nine issues on appeal.  Petitioner has not shown a reasonable probability that, had counsel raised any other claim, his conviction or punishment would have been reversed on appeal. The state habeas court's denial of these claims is not an unreasonable application of *Strickland*.  Petitioner's claims of ineffective assistance of appellate counsel are without merit and should be denied.

## VII.  STATE HABEAS PROCEEDINGS

In his third ground for relief, Petitioner asserts that his rights were violated during the state

habeas proceedings when the trial judge did not rule on his pleadings, when the judge appointed an attorney to represent the court, and when the clerk's office allegedly threw away his documents. These claims are not cognizable under 28 U.S.C. § 2254.  Federal habeas relief cannot be had "absent the allegation by a [Petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."  *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  The courts entertain federal petitions under § 2254 "only on the ground" that the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a).  Courts cannot grant habeas corpus relief to correct alleged errors in state habeas proceedings.  *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors); *see also Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[E]rrors in state postconviction proceedings will not, in and of themselves, entitle a Petitioner to federal habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("infirmities in state habeas [and other post-conviction] proceedings do not constitute grounds for relief in federal court." ).  Petitioner's challenges to the state post-conviction proceedings merely attack proceedings collateral to his detention and not his detention itself.  Accordingly, these claims entitle him to no habeas relief.

## VIII.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## IX.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

SIGNED on this 6th day of September, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE